UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAMES D. CURRY,

                Plaintiff,                **MEMORANDUM AND ORDER**
                                                                      06-CV-2841 (DRH) (ETB)

           - against -

MICHAEL L. CAMPBELL, Shield No. 5346,
individually and as a Police Officer of the Suffolk
County, New York Police Department, RICHARD
LANE, ROBERT GARDENER, individually and
as employees of the Suffolk County, New York
District Attorney's Office, and SUFFOLK COUNTY,

                Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**ORRICK HERRINGTON & SUTLIFFE LLP**
Attorneys for Plaintiff
666 Fifth Avenue
New York, New York 10103
By:    Lauren Jill Elliot, Esq.
         Melissa Kate Depetris, Esq.

**DENNIS M. COHEN**
**SUFFOLK COUNTY ATTORNEY**
Attorney for Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
By:    Brian C. Mitchell, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff James D. Curry commenced this action on June 6, 2006, alleging that he had been subjected to excessive force in connection with his arrest on August 22, 2003 in violation of his Fourth Amendment rights. The Complaint named defendants Michael L. Campbell, a police officer for the Suffolk County Police Department ("SCPD"), Richard Lane and Robert Gardener,

employees of the Suffolk County District Attorney's Office, and the County of Suffolk (the "County"). Presently before the Court is plaintiff's motion to amend the Complaint pursuant to Federal Rule of Civil Procedure 15 to add Thomas M. Kenneally, a Sergeant with the SCPD, as a defendant. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

### *The Complaint*

Plaintiff's allegations set forth in the original Complaint are brief and straight-forward. On August 22, 2003 at approximately 3:50 p.m., in the area of Foxcroft Lane in Patchogue, New York, plaintiff "was subjected to excessive force by defendants Campbell, Lane and Gardener, who acted jointly; the abuse included repeated blows to the head; a weapon was used in the beating of plaintiff." (Compl. ¶ 8.) Plaintiff further alleges that none of the individual defendants made any "effort to prevent or stop the abuse . . . and failed to protest it." (*Id.* ¶ 9.) According to plaintiff, "[b]efore the individual defendants beat plaintiff, Michael L. Campbell said to him: 'Don't want to pull over asshole?'" (*Id.* ¶ 10.) Plaintiff alleges that, as a result of this incident, he sustained serious physical injuries, including a fractured skull, epidural hematoma, and traumatic subarachnoid hemorrhage, as well as emotional distress damages. (*Id.* ¶ 11.) Plaintiff asserts a *Monell* claim against the County. (*Id.* ¶¶ 12-14.)

### *Procedural History*

Upon the completion of discovery, this case was deemed trial ready on October 17, 2007. A final pretrial conference was held on July 9, 2009 and a jury trial was scheduled for January 1, 2010. On that date, plaintiff represented that he was not ready to proceed and, with the consent of defendants, the trial date was adjourned to May 3, 2010. At plaintiff's request, the trial was

again adjourned to August 23, 2010. Prior to the new trial date, however, plaintiff requested that his attorney be relieved as counsel and that discovery be re-opened. By Order dated August 13, 2010, this Court granted plaintiff's request that his attorney be relieved as counsel and adjourned the August 23, 2010 trial date sine die.

On October 13, 2010, plaintiff's current counsel appeared on plaintiff's behalf. On December 7, 2010, Magistrate Judge E. Thomas Boyle granted plaintiff's application to re-open discovery. Plaintiff deposed several defendants and non-party witnesses during the week of March 15, 2011. (*See* Decl. of Scott Roehm, dated May 19, 2011 ("Roehm Decl."), Ex. C (deposition of Thomas M. Kenneally, taken on March 15, 2011), Ex. D (deposition of Michael L. Campbell, taken on March 16, 2011), & Ex. G (deposition of Kenneth L. Fasano, taken on March 18, 2011).) Based on information learned at these depositions, plaintiff filed the present motion to amend the Complaint to add Kenneally as a defendant.

***The Asserted Basis for Plaintiff's Motion to Amend***

Throughout the litigation, the parties have not disputed that plaintiff was arrested on August 22, 2003 at the conclusion of a vehicle pursuit involving law enforcement personnel from the Suffolk County District Attorney's Office and the SCPD. (Pl.'s Mem. at 2; Defs.' Opp'n at 4.) There is also no dispute that plaintiff suffered from serious physical injuries – including a fractured skull – at the time of his arrest. (Pl.'s Mem. at 2; Defs.' Opp'n at 4.) However, the cause of plaintiff's injuries is in dispute. Plaintiff asserts that he was struck in the head by "at least one police officer" at approximately 3:50 p.m. (Pl.'s Mem. at 2), while defendants claim that plaintiff "received his injuries when he jumped out of his vehicle" (Defs.' Opp'n at 4).

Plaintiff claims that as a result of the depositions taken in March 2011, he "learned that

3

Kenneally played a central role in the events giving rise to plaintiff's claims and should have been named as a defendant from the outset." (Pl.'s Mem. at 3.) In particular, plaintiff learned that Kenneally, then a uniformed "road/patrol sergeant" with the 5th Precinct of the SCPD, was Campbell's supervisor on the day of plaintiff's arrest. (*Id.*) Kenneally testified during his deposition that on August 22, 2003 he learned of the vehicle pursuit and responded to the location. (*Id.*) The parties do not dispute that as plaintiff drove onto Foxcroft Lane, Kenneally was the first police officer to follow. (*Id.*; Defs.' Opp'n at 4.)

According to plaintiff, he stopped his vehicle on Foxcroft Lane and exited, while instructing his wife (a passenger in the vehicle) to move into the driver's seat and drive away. (Pl.'s Mem. at 4.) Plaintiff "turned to run behind a house and was met immediately by a uniformed police officer, who said to plaintiff something along the lines of: 'Don't want to pull over, asshole?'" (*Id.*) Plaintiff now asserts that he does not know the identity of the uniformed police officer who made this statement (*id.*; *see also* Pl.'s Dep. at 90-92), although, as noted above, in the Complaint that statement is unequivocally attributed to Campbell (*see* Compl. ¶ 10.) Plaintiff asserts that after this comment was made, he was struck in the head and dragged into the road, but cannot remember any details about the attack or his attacker. (Pl.'s Mem. at 4.)

Defendants claim that plaintiff sustained his injuries by jumping out of his car after it turned onto Foxcroft Lane, although there is no record evidence that either Kenneally or any of the defendants actually observed him doing so.[1] (Defs.' Opp'n at 4.) The SCPD Internal Affairs

---

[1] In a January 18, 2007 internal memorandum sent by Kenneally to Lt. Kenneth L. Fasano, of the SCPD Internal Affairs Bureau, Kenneally stated: "Apparently, and according to a sworn statement supplied by [Curry's] wife who was in the vehicle at the time, Mr. Curry jumped from the moving vehicle shortly after turning onto Foxcroft Lane thereby sustaining his injuries. However, I did not observe this and I am not aware of anyone, besides his wife, who did." (*See*

4

Bureau conducted an investigation after plaintiff filed an administrative complaint following his arrest. In connection with that investigation, Kenneally denied using any "physical force" against plaintiff and denied witnessing the use of such force by anyone else on the scene. (Roehm Decl., Ex. H.)

During the March 2011 depositions, plaintiff also learned that Kenneally remained at, and was in command of, the scene of plaintiff's arrest until plaintiff was taken away by ambulance. (Pl.'s Mem. at 5 (citing Kenneally Dep. at 46).) Kenneally told Campbell that he (Campbell) was considered the arresting officer and instructed Campbell to fill out the arrest report. (*Id.* (citing Campbell Dep. at 30).) Plaintiff asserts that Kenneally's name does not appear in the paperwork created as a result of plaintiff's arrest.[2]

## DISCUSSION

### I. Legal Standard

Rule 15 provides that leave to amend a pleading is granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). The Rule does not, however, permit amendments that would be futile, including amendments asserting time-barred claims. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). It is well settled that the statute of limitations for a Section 1983 claim is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Here, because the alleged excessive force occurred in August 2003, the applicable three-year statute of limitations period has long since expired.

If, however, "a complaint is amended to include an additional defendant after the statute

---

Roehm Decl., Ex. H.)

[2] Plaintiff's arrest paperwork has not been supplied for the Court's review.

5

of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001). Pursuant to Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading" when three conditions are met: (1) the new claims "arose out of the conduct, transaction, or occurrence" set forth in the original pleading, and (2) "within the period provided for by Rule 4(m) for serving the summons and complaint," the new party "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) during the Rule 4(m) service period the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Here, the parties do not dispute that a Fourth Amendment excessive force claim asserted by plaintiff against Kenneally would arise out of the same conduct alleged in the original Complaint; i.e., the excessive force allegedly used against plaintiff during his arrest on August 22, 2003. The second and third elements, however, are at issue.

## II.  Kenneally had Sufficient Constructive Notice of the Action

"The linchpin [of Rule 15(c)] is notice, and notice within the limitations period." *Rodriguez v. City of New York*, 2011 WL 4344057, at *7 (S.D.N.Y. Sept. 7, 2011) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)) (internal quotation marks omitted, alteration in the original). To determine whether the notice element of Rule 15(c) has been satisfied, the Court must make two inquiries. First, did Kenneally receive notice of plaintiff's action within 120 days of the filing of the Complaint? And, if so, was that notice "sufficient to avoid prejudicing him in defending" claims against him? *Oladokun v. Ryan*, 2011 WL 4471882, at *6 (S.D.N.Y. Sept. 27,

2011).

"While actual notice is preferable, 'constructive notice' may suffice in some instances." *Smith v. Westchester Cnty. Dep't of Corr.*, 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012). "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit." *Berry v. Vill. of Millbrook*, 2010 WL 3932289, at *5 n.6 (S.D.N.Y. Sept. 29, 2010) (quoting *Muhammad v. Pico*, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003)) (internal quotation marks and alteration omitted); *see also Velez v. Fogarty*, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008) ("The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period.").

Here, plaintiff asserts that Kenneally had constructive notice of the action within 120 days of the filing of the Complaint because Kenneally, as a SCPD employee, is represented by the same attorney that has represented the County and the individual defendants since the inception of this action. As set forth in Rule 15(c), however, "notice alone is not sufficient for relation back of late claims against new defendants. The notice must be such that 'the party will not be prejudiced in maintaining a defense on the merits.'" *Mosley v. Jablonsky*, 209 F.R.D. 48, 54 (E.D.N.Y. 2002). "In deciding whether the shared attorney has the requisite knowledge, the appropriate inquiry is whether that attorney knew or should have known that the prospective defendants would be named." *Smith*, 2012 WL 527222 at *5 (internal quotation marks and

7

alterations omitted). "[I]n the majority of cases in this Circuit applying the constructive notice doctrine, the attorneys have clear knowledge of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) take[ ] steps to begin preparing a defense." *Velez*, 2008 WL 5062601 at *6.

Defendants argue that the Complaint did not "allege[] conduct on the part of other unknown officers or designate[] certain defendants as 'John Doe' officers in the complaint" and, as such, there was nothing to suggest that Kenneally would eventually be added as a defendant. (Defs.' Opp'n at 12.) There is some validity to this argument. *See Smith*, 2012 WL 527222 at *8 (noting that "the inclusion of 'John Doe' defendants clearly signals the plaintiff's lack of knowledge as to the identity of certain defendants, thereby alerting defense counsel, at the beginning of a case, to the existence of defendants that have yet to be identified"). Plaintiff counters that "there was more than enough information easily accessible in the course of opposing counsel's routine preliminary investigation to put him on notice of Kenneally's potential liability." (Pl.'s Mem. at 13.) In particular, plaintiff points out that police radio transmissions from the date of the arrest made clear that Kenneally was the supervisor of the scene and was the first police officer to report that plaintiff had jumped out of his vehicle. (*Id.* at 14 (citing Roehm Decl., Ex. F).) Additionally, the radio transmissions indicate that Kenneally "encountered plaintiff at 3:50 p.m., the time plaintiff alleges he was assaulted." (*Id.*) Plaintiff asserts that "[o]pposing counsel produced the radio transmissions" shortly after plaintiff commenced the action and within the Rule 4(m) period. (*Id.*) Plaintiff also asserts that the SCPD Internal Affairs Bureau requested and reviewed the radio transmissions as part of its

investigation, and that Kenneally himself submitted a statement in connection with that investigation. (*Id.* at 15.) According to plaintiff, the radio transmissions and Kenneally's statement "would surely have identified Kenneally and his role in plaintiff's arrest" to defendants' counsel. (*Id.*)

The Court finds that the constructive notice doctrine applies here. As noted above, during the 120-day service period, the attorney for the County and individual defendants – who would be the same attorney to eventually represent Kenneally during his March 2011 deposition – received notice of plaintiff's Complaint. Counsel also knew (or should have known) from his review of the radio transmissions, which were used in connection with the SCPD Internal Affairs investigation prior to the filing of the Complaint and were produced to plaintiff within the 120-day service period, that Kenneally supervised the scene of the arrest and was present at 3:50 p.m. – the specific time at which plaintiff's alleged assault occurred. Thus, even though Kenneally was not named in the Complaint, and even though the Complaint did not suggest on its face that other individuals may have been involved in the alleged incident, based upon investigations undertaken as part of its representation of defendants, their attorney had a reasonable basis to know of Kenneally's involvement. Thus, Kenneally had constructive notice of the action such that he would "not be prejudiced in defending on the merits." *See* Fed. R. Civ. P. 15(c)(1)(C)(i).

III. *Plaintiff has Failed to Establish That Kenneally Should Have Known That he was not Sued Because of a Mistake Concerning his Identity as Distinct From an Informed Decision not to do so*

Turning to the third element, set forth under Rule 15(c)(1)(C)(ii), plaintiff must demonstrate that during the 120-day service period (which expired on October 4, 2006) Kenneally "knew or should have known that the action would have been brought against [him],

9

but for a mistake concerning [his] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Supreme Court recently addressed this requirement in *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485 (2010), and held that: "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski*, 130 S.Ct. at 2493 (emphases in the original). "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496.

In *Krupski*, the plaintiff was injured while aboard a cruise ship. Her passenger ticket identified the carrier as Costa Crociere S.p.A. *Id.* at 2490. Her ticket also identified a related corporate entity, Costa Cruise Lines N.V., as the "sales and marketing agent for the CARRIER and the issuer of this Passage Ticket Contract." *Id.* Plaintiff sued Costa Cruise Lines, and her complaint made clear that she believed Costa Cruise Lines "owned, operated, managed, supervised and controlled" the cruise ship. *Id.* at 2490-91. In reality, Costa Crociere was the entity that performed those functions. *Id.* at 2491. After the limitations period expired, plaintiff moved to amend her complaint to add Costa Crociere as a defendant.

The Court, examining only the third element under Rule 15(c)(1)(C)(ii), held that "[b]ecause the complaint made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, and also indicated (mistakenly) that Costa Cruise performed those roles, Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only

10

because of Krupski's misunderstanding about which "Costa" entity was in charge of the ship –
clearly a 'mistake concerning the proper party's identity.'" *Id.* at 2497 (internal citations
omitted). The Court further held that any delay on the plaintiff's part in moving to amend her
complaint once she learned of her mistake "is relevant only to the extent it may have informed
Costa Crociere's understanding during the Rule 4(m) period of whether she made a mistake
originally." *Id.* The Court determined that "[n]othing in Krupski's conduct during the Rule 4(m)
period suggests that she failed to name Costa Crociere because of anything other than a mistake."
*Id.* at 2498. Finally, the Court noted that Costa Cruise and Costa Crociere were "related
corporate entities with very similar names," and that "[t]his interrelationship and similarity
heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa
Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.* (noting
that because both entities were listed on the ticket, "Costa Crociere's own actions contributed to
passenger confusion over the 'proper party' for a lawsuit").

When applying the analytical framework set forth in *Krupski*,[3] the Court concludes that

---

[3] Defendants argue that the Second Circuit's decision in *Barrow v. Wethersfield Police Department*, 66 F.3d 466 (2d Cir. 1995) controls here. (*See* Defs.' Opp'n at 10.) In *Barrow*, the Second Circuit held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow*, 66 F.3d at 470 (finding that when "new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met"). The Supreme Court's decision in *Krupski* has resulted in "a split in the district courts as to whether *Barrow* remains good law." *Askins v. City of New York*, 2011 WL 1334838, at *1 n.3 (S.D.N.Y. Mar. 25, 2011); *compare Dominguez v. City of New York*, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010) ("*Krupski* merely picks up where *Barrow* left off. *Barrow* asked whether a mistake has been committed; *Krupski* assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii). Therefore, *Barrow*'s holding that a lack of knowledge is not a mistake is still intact.") *and Rodriguez*, 2011 WL 4344057 at *9 (finding "*Krupski* does not control and *Barrow* should apply" when plaintiff "did not harbor a misimpression as to known parties' identities," but instead "did not know the

Kenneally did not know (and should not have known) during the Rule 4(m) period that he would have been named in plaintiff's Complaint but for a mistake concerning his identity. Plaintiff's purported mistake in failing to name Kenneally was not evident from the face of the Complaint, which (1) specifically asserted that three – and only three – individuals were involved in the incident, (2) unequivocally attributed the "Don't want to pull over, asshole?" comment to Campbell, (3) did not name any "John Doe" defendants, and (4) generally gave no impression that other unidentified individuals were involved in the incident. *See Smith*, 2012 WL 527222 at **8, 9 (finding plaintiff did not meet third element when, *inter alia*, plaintiff "unequivocally named" one officer as his assailant in his original complaint and did not list any "John Doe" defendants); *Cf. Bishop v. Best Buy, Co. Inc.*, 2010 WL 4159566, at *3 (S.D.N.Y. Oct. 13, 2010) (finding plaintiff's mistake was "clearly indicated by the face of the complaint in that he plainly sought to sue the entity responsible for owning and managing the store at which the alleged incident took place" but named the wrong corporate entity; additionally, although the original complaint did not identify individual defendants by name, it "identified the positions held by each") (internal quotation marks omitted).

Nor did plaintiff's conduct during the Rule 4(m) service period (i.e., before October 4,

---

identities of [the proposed defendants] until after the statute of limitations had run") *with Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010) (disagreeing with the "narrow understanding of a Rule 15(c) 'mistake'" set forth in *Dominguez*, and finding that "[a]fter *Krupski*, it is clear that a mistake 'concerning the proper party's identity' under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party"). In this case, the Court need not decide whether *Barrows* remains good law after *Krupski* because the end result would be the same either way. Under the *Barrows* rule, plaintiff's lack of knowledge of Kenneally's identity would not constitute a "mistake" under Rule 15(c). And applying the *Krupski* standard, as set forth in the text below, plaintiff has not shown that Kenneally was or should have been aware that he would have been named in the suit but for a mistake concerning his identity.

2006) suggest that his failure to name Kenneally was attributable to a mistake concerning Kenneally's identity. As plaintiff points out, defendants had produced transcripts of the radio transmissions – which indicated that Kenneally was the supervisor of the arrest scene and present at the time of the alleged events – prior to the expiration of the Rule 4(m) period. (*See* Pl.'s Mem. at 14.) "Information in the plaintiff's possession is relevant only if it bears on the [prospective] defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski*, 130 S.Ct. at 2493-94; *see also id.* at 2497 (finding that "any delay" on the part of the plaintiff in moving to add new defendants once she became aware of her mistake "is relevant only to the extent it may have informed [the prospective defendant's] understanding during the Rule 4(m) period of whether [plaintiff] made a mistake originally"). During the Rule 4(m) period, Kenneally had constructive notice not only that the Complaint exclusively named only three defendants and did not indicate that any other officers played a role in the alleged assault, but also that plaintiff possessed transcriptions of radio transmissions that evidenced his presence on the scene. A reasonable conclusion would be that plaintiff deliberately chose not to name him as a defendant, even though he was present at the scene.[4]

Plaintiff asserts that "Kenneally is largely responsible for plaintiff's lack of knowledge, which is the product of memory damage resulting from his brain injury and the absence of

---

    4    The Court is unable to determine from the papers submitted if individuals other than the three defendants and Kenneally were present at the scene of plaintiff's arrest, although the Court suspects that there were. (*See* Roehm Decl., Ex. H (referring to "other units").) Any failure by plaintiff to name other individuals who were also present at the scene would only bolster the reasonableness of Kenneally belief that plaintiff's failure to name him was a deliberate choice rather than a mistake.

Kenneally's name on plaintiff's arrest paperwork." (Pl.'s Mem. at 16.)[5]  Plaintiff further argues that "[t]aking plaintiff's allegations as true, Kenneally either participated in or permitted plaintiff's assault and Kenneally kept his name out of the arrest paperwork by ordering Campbell to process the arrest." (*Id.*)  As an initial matter, the Court notes that plaintiff has failed to submit a proposed Amended Complaint and, as such, it is difficult for the Court to determine the exact allegations it should be "taking [ ] as true" at this point.  *See AT&T Corp. v. Am. Cash Card Corp.*, 184 F.R.D. 515, 521 (S.D.N.Y. 1999) ("To satisfy the requirement of particularly in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.") (internal quotation marks omitted).  Moreover, plaintiff has submitted nothing that would support its contention that Kenneally ordered Campbell to process the arrest for the purpose of avoiding detection by a future litigant.  There has been no evidence submitted that Kenneally would normally have processed an arrest or filled out paperwork in situations like this, and plaintiff has made no suggestion that Kenneally deviated from normal operating procedure in designating Campbell as the arresting officer.

Thus, plaintiff has failed to satisfy the Rule 15(c) requirements, and any amendment to add Kenneally as a defendant could not "relate back" to the original Complaint.  Such proposed amendment would only serve to assert a time-barred claim and, therefore, it must be denied as futile.

---

[5]  The Court notes that, as set forth above, the relevant inquiry is "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski*, 130 S.Ct. at 2493 (emphases in the original).

## CONCLUSION

For the reasons set forth below, plaintiff's motion to amend the Complaint is denied. A Final Pre-Trial Conference is scheduled for May 4, 2012 at 3:00 p.m. Counsel are directed to submit a letter, not to exceed three pages, which outlines their respective settlement positions. These letters are to be mailed or faxed to Chambers – not filed on ECF. Counsel attending the conference shall have full authority to settle the case. If the case cannot settle, the Court will set a trial date.

**SO ORDERED.**

Dated: Central Islip, New York
   March 23, 2012               /s/
                           Denis R. Hurley
                           Unites States District Judge