UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAMES D. CURRY,

               Plaintiff,                          **MEMORANDUM AND ORDER**
                                                                     06-CV-2841 (DRH) (ETB)
            - against -

MICHAEL L. CAMPBELL, Shield No. 5346,
individually and as a Police Officer of the Suffolk
County, New York Police Department, RICHARD
LANE, ROBERT GARDENER, individually and
as employees of the Suffolk County, New York
District Attorney's Office, and SUFFOLK COUNTY,

               Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**ORRICK HERRINGTON & SUTLIFFE LLP**
Attorneys for Plaintiff
666 Fifth Avenue
New York, New York 10103
By:    Lauren Jill Elliot, Esq.
         Melissa Kate Depetris, Esq.

**DENNIS M. COHEN**
**SUFFOLK COUNTY ATTORNEY**
Attorney for Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
By:    Brian C. Mitchell, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff James D. Curry commenced this action on June 6, 2006, alleging that he had been subjected to excessive force in connection with his arrest on August 22, 2003 in violation of his Fourth Amendment rights. The Complaint named defendants Michael L. Campbell, a police officer for the Suffolk County Police Department ("SCPD"), Richard Lane and Robert Gardener,

employees of the Suffolk County District Attorney's Office, and the County of Suffolk (the "County"). Plaintiff moved to amend the Complaint pursuant to Federal Rule of Civil Procedure 15 to add Thomas M. Kenneally, a Sergeant with the SCPD, as a defendant. By Memorandum & Order dated March 23, 2012, the Court denied plaintiff's motion to amend. Presently before the Court is plaintiff's motion for reconsideration of that portion of the Court's March 23, 2012 Memorandum & Order ("March 23 Order") in which it held that plaintiff had failed to demonstrate that "during the 120-day service period (which expired on October 24, 2006) Kenneally 'knew or should have known that the action would have been brought against [him], but for a mistake concerning [his] identity.'" (March 23 Order at 9-10 (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)) (alterations in the original).) For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

*The Complaint*

As set forth in the March 23 Order, plaintiff's allegations set forth in the original Complaint are brief and straight-forward. On August 22, 2003 at approximately 3:50 p.m., in the area of Foxcroft Lane in Patchogue, New York, plaintiff "was subjected to excessive force by defendants Campbell, Lane and Gardener, who acted jointly; the abuse included repeated blows to the head; a weapon was used in the beating of plaintiff." (Compl. ¶ 8.) Plaintiff further alleges that none of "the individual defendants" made any "effort to prevent or stop the abuse perpetrated by his [c]o-defendant and failed to protest it." (*Id.* ¶ 9.) According to plaintiff, "[b]efore the individual defendants beat plaintiff, Michael L. Campbell said to him: 'Don't want to pull over asshole?'" (*Id.* ¶ 10.) Plaintiff alleges that, as a result of this incident, he sustained

2

serious physical injuries, including a fractured skull, epidural hematoma, and traumatic subarachnoid hemorrhage, as well as emotional distress damages. (*Id.* ¶ 11.) Plaintiff asserts a *Monell* claim against the County. (*Id.* ¶¶ 12-14.)

*Plaintiff's Motion to Amend*

Although this case was deemed trial ready on October 17, 2007, the trial date was adjourned several times at plaintiff's request. By Order dated August 13, 2010, this Court granted plaintiff's request that his attorney be relieved as counsel and adjourned the trial sine die. On October 13, 2010, plaintiff's current counsel appeared on plaintiff's behalf. After Magistrate Judge E. Thomas Boyle granted plaintiff's application to re-open discovery, plaintiff deposed several defendants and non-party witnesses (including Kenneally) during the week of March 15, 2011.

Plaintiff's motion to amend was based upon his claims that, as a result of the depositions taken in March 2011, he "learned that Kenneally played a central role in the events giving rise to plaintiff's claims and should have been named as a defendant from the outset." (March 23 Order at 3-4 (internal quotation marks omitted).) In particular, plaintiff learned that Kenneally, then a uniformed "road/patrol sergeant" with the 5th Precinct of the SCPD, was Campbell's supervisor on the day of plaintiff's arrest. (*Id.* at 4.) Plaintiff also learned that Kenneally remained at, and was in command of, the scene of plaintiff's arrest until plaintiff was taken away by ambulance. (*Id.* at 5.) Kenneally told Campbell that he (Campbell) was considered the arresting officer and instructed Campbell to fill out the arrest report. (*Id.*) As a result, plaintiff asserted, Kenneally's name does not appear in plaintiff's arrest paperwork.

Based upon this information, plaintiff sought to add Kenneally as a defendant to the

action. As the Court noted in its March 23 Order, plaintiff did not submit a proposed amended pleading. (*Id.* at 14.)[1]

*The March 23 Order*

Because the applicable statute of limitations had expired, the Court concluded that plaintiff's proposed amendment would be timely only if it related back to the original Complaint. Pursuant to Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading" when three conditions are met: (1) the new claims "arose out of the conduct, transaction, or occurrence" set forth in the original pleading, and (2) "within the period provided for by Rule 4(m) for serving the summons and complaint," the new party "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) during the Rule 4(m) service period the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(c).

The parties did not dispute that the first element was met. As for the second element, the Court concluded that "Kenneally had constructive notice of the action such that he would 'not be prejudiced in defending on the merits,'" thereby satisfying the second element. (*See* March 23 Order at 9 (quoting Fed. R. Civ. P. 15(c)(1)(C)(i)).) The Court found, however, that plaintiff had failed to adequately demonstrate that the third element was met. Applying the analytical framework set forth in *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485 (2010)*,* the Court concluded that "Kenneally did not know (and should not have known) during the Rule 4(m)

---

[1] Plaintiff has submitted his proposed amended pleading as an attachment to his motion for reconsideration.

4

period that he would have been named in plaintiff's Complaint but for a mistake concerning his identity." (March 23 Order at 12-13.) The Court found that "[p]laintiff's purported mistake in failing to name Kenneally was not evident from the face of the Complaint," and that "plaintiff's conduct during the Rule 4(m) service period (i.e., before October 4, 2006) [did not] suggest that his failure to name Kenneally was attributable to a mistake concerning Kenneally's identity." (*Id.* at 12, 13.) Overall, the Court concluded that:

> During the Rule 4(m) period, Kenneally had constructive notice not only that the Complaint exclusively named only three defendants and did not indicate that any other officers played a role in the alleged assault, but also that plaintiff possessed transcriptions of radio transmissions that evidenced [Kenneally's] presence on the scene. A reasonable conclusion would be that plaintiff deliberately chose not to name him as a defendant, even though he was present at the scene.

(*Id.* at 13.)

## DISCUSSION

### I. Legal Standard

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union,* 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted).

5

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

## II. *Plaintiff's Motion is Denied*

### A. *Plaintiff's Argument That the Court Misapplied the* **Krupski** *Analytical Framework is Unconvincing*

Plaintiff contends that the Court misapplied the analytical framework articulated in *Krupski*. In that case, the plaintiff was injured while aboard a cruise ship. Her passenger ticket identified the carrier as Costa Crociere S.p.A. *Krupski*, 130 S.Ct. at 2490. Her ticket also identified a related corporate entity, Costa Cruise Lines N.V., as the "sales and marketing agent for the CARRIER and the issuer of this Passage Ticket Contract." *Id.* Plaintiff sued Costa Cruise Lines, and her complaint made clear that she believed Costa Cruise Lines "owned, operated, managed, supervised and controlled" the cruise ship. *Id.* at 2490-91. In reality, Costa Crociere was the entity that performed those functions. *Id.* at 2491. After the limitations period expired, plaintiff moved to amend her complaint to add Costa Crociere as a defendant.

The Court, examining only the third element under Rule 15(c)(1)(C)(ii), held that "[b]ecause the complaint made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, and also

6

indicated (mistakenly) that Costa Cruise performed those roles, Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only because of Krupski's misunderstanding about which "Costa" entity was in charge of the ship – clearly a 'mistake concerning the proper party's identity.'" *Id.* at 2497 (internal citations omitted). The Court further held that any delay on the plaintiff's part in moving to amend her complaint once she learned of her mistake "is relevant only to the extent it may have informed Costa Crociere's understanding during the Rule 4(m) period of whether she made a mistake originally." *Id.* The Court determined that "[n]othing in Krupski's conduct during the Rule 4(m) period suggests that she failed to name Costa Crociere because of anything other than a mistake." *Id.* at 2498. Finally, the Court noted that Costa Cruise and Costa Crociere were "related corporate entities with very similar names," and that "[t]his interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.* (noting that because both entities were listed on the ticket, "Costa Crociere's own actions contributed to passenger confusion over the 'proper party' for a lawsuit").

Plaintiff asserts that the Court erred by placing undue emphasis on the fact that plaintiff "knew about Kenneally's involvement in the arrest prior to the expiration of the Rule 4(m) limitations period" by virtue of defendant's production of the radio transmission transcripts, but failed to seek to amend the Complaint to add Kenneally as a defendant within that Rule 4(m) period. (Pl.'s Mem. at 8.) According to plaintiff, "the rule set forth in *Krupski* is much narrower than the one invoked in the [March 23 Order]: . . . the mere fact that a plaintiff learns about the prospective defendant's identity and role in the events at issue during the Rule 4(m) period but

7

does not seek to amend at that time is insufficient to support a reasonable belief that the plaintiff deliberately chose not to sue that defendant." (*Id.* at 10.)

The Court's focus in its March 23 Order, however, was not on any delay on the part of plaintiff in moving to amend. Rather, the Court found that information in plaintiff's possession – i.e., radio transmission transcripts that purportedly evidence Kenneally's existence and role at the scene of plaintiff's arrest – was relevant in that it bore on Kenneally's understanding of whether plaintiff had made a mistake (as opposed to a deliberate decision) by not suing him. (*See* March 23 Order at 13.) As plaintiff points out, the Supreme Court has set forth that "it would be error to conflate knowledge of a party's existence with the absence of a mistake" because "[t]hat a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Krupski*, 130 S.Ct. at 2494. The Court has not done that in this case. Indeed, there has never been any assertion that plaintiff knew of Kenneally's identity but harbored some misunderstanding about his role in the events that led up to plaintiff's arrest. In fact, plaintiff has steadfastly maintained that because Campbell completed the arrest paperwork, Kenneally's name was not listed in plaintiff's arrest records.

### B. Plaintiff's Argument That the Purported Mistake was Evident on the Face of the Complaint is Similarly Unpersuasive

In the March 23 Order, the Court further concluded: "Plaintiff's purported mistake in failing to name Kenneally was not evident from the face of the Complaint, which (1) specifically asserted that three – and only three – individuals were involved in the incident, (2) unequivocally attributed the "Don't want to pull over, asshole?" comment to Campbell, (3) did not name any "John Doe" defendants, and (4) generally gave no impression that other unidentified individuals

were involved in the incident." (March 23 Order at 12.) Other than asserting that the Court "misconstrue[d] the text of the Complaint," and paraphrasing and characterizing the allegations set forth in the Complaint (*see* Pl.'s Mem. at 11-14), plaintiff does not point to any factual matters that the Court overlooked. Furthermore, the Court rejects plaintiff's argument that "it should have been obvious to Kenneally, given his awareness of his own role in Plaintiff's arrest and that he, not Campbell, had made [the "Don't want to pull over, asshole?] statement, that Plaintiff had confused him with Campbell." (*See id.* at 12.) There is no evidence to support plaintiff's assumption that Kenneally made the statement attributed to Campbell in the original Complaint, particularly since plaintiff himself testified during his deposition that he cannot remember who made the statement. (*See* March 23 Order at 4 (citing Pl.'s Dep. at 90-92).)

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for reconsideration is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      May 2, 2012                                              /s/
                                                                     Denis R. Hurley
                                                                     Unites States District Judge